IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BLUE RIDGE CUSTODIAL CORP.,
dba BLUE RIDGE SERVICE CORP.,
Plaintiff,

v.

Case No. 2: 04-CV-77
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

FRANKLIN COUNTY, OHIO, et al.,
Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion for Summary Judgment (Doc. #13). For the reasons that follow, the motion is granted.

### I.

Plaintiff, Blue Ridge Custodial Corp. ["Blue Ridge"], brings this action against Franklin County, Ohio, the Franklin County Board of Commissioners, and three Franklin County Commissioners: Arlene Shoemaker, Dewey Stokes and Mary Jo Kilroy, in connection with Plaintiff's unsuccessful bid to provide cleaning services for various Franklin County government offices. Plaintiff's claims are pursuant to 42 U.S.C. § 1983 for alleged violations of equal protection and due process. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

In September 2001, the Defendant Franklin County Board of Commissioners issued an Invitation to Bid ["ITB"] on a contract for countywide cleaning services involving various Franklin County government offices. (*Complaint* at ¶ 10). Bid submissions were to be made by

October 16, 2001 at 10:00 a.m. (*Id.*). Plaintiff submitted a timely bid proposal for a total of 430 minimum hours per day, at an hourly rate of $11.1284 and a total yearly bid price of $1,244,160.00. (*Id.* at ¶ 27). Plaintiff contends that its bid was in compliance with the ITB but that it was not selected because of alleged ill-will toward Plaintiff's President, Glenn Ford. (*Id.* at ¶¶ 17-26).

Mr. Ford had prior dealings with Ms. Marianne Barnhart, Franklin County Public Facilites Manager[1]. Mr. Ford was formerly employed by a company that held the contract to clean the Franklin County Courthouse. Mr. Ford had also given presentations to the Ohio Public Facility Maintenance Association, of which Ms. Barnhart is a former president. (*Id.* at ¶ 17). Mr. Ford claims that Ms. Barnhart harbors ill-will toward him because Mr. Ford failed to appear for a presentation on one occasion. (*Id.* at ¶ 19).

Mr. Ford alleges that this ill-will was manifested at a meeting with Ms. Barnhart to discuss the Plaintiff's interest in the ITB at issue in this case. According to Plaintiff, Ms. Barnhart stated that Plaintiff would not be a successful bidder because it was already under contract to clean the Franklin County Municipal Court building. (*Id.* at ¶ 23). Mr. Ford perceived this comment as meaning that Barnhart would seek a way to obtain a bad reference regarding the company's work at Franklin County Municipal Court. (*Ford Depo.* at 65). Mr. Ford informed Ms. Barnhart that he would protest if Plaintiff was not selected for this reason because he viewed his work as satisfactory. (*Id.* at 66).

The ITB was issued under the provisions of R.C. §§ 307.86 to 307.92, which sets forth

---

[1] Ms. Barnhart is not named as a Defendant in this case. Plaintiff alleges that Barnhart recommended the company which was given the award.

2

the procedure for competitive bidding. In accordance with the statute, the ITB states:

> 8.1 This bid will be awarded to the lowest and best bidder whose bid meets the requirements and criteria set forth in the Invitation to Bid on an "ALL or NONE" basis. Bids are typically evaluated within 60 days.
>
> 8.2 Factors that determine the lowest and best bid include, but not limited (Ranked in order of relative importance):
>   8.2.1 Total bid price
>   8.2.2 Quality of the bidder's product or services
>   8.2.3 Capability of the bidder to perform the contract
>   8.2.4 References and response to part 6, 7, 8, 9, 10, 11 and 12 of Section F
>   8.2.5 Bid responsiveness to overall specifications.
>
> The price evaluation and comparison portion of this bid will be based on the proposed hours that a bidder states in the bid response times the bid hourly rate (not on the suggested hours pre-established by Franklin county). The award will be made to the qualified bidder who offers the county the lowest bid for all facilities including the ADAMH Board.

(Exhibit A attached to Supplement to *Complaint*).

The Franklin County Department of Public Facilities Management established an evaluation team to review and evaluate the bids received in order to make a recommendation to the Franklin County Commissioners. (*Deposition of Marianne Barnhart* at 18-30). The team established an Evaluation Summary, with an percentage allocation[2], consistent with § 8.2 of the ITB. (Exhibit J attached to Supplement to *Complaint*). The team requested that bidders include references for other facilities the bidders had served, including references pertaining to cleaning a five-story building and a ten-story building.

---

[2]Total yearly bid price constitutes 55% of the allocation; references as to quality constitute 10%; capability constitutes 20%, references as to history constitute 10%; and responsiveness (*i.e.*, the bid proposal is "all inclusive and in the proper order") constitutes 5%. (Exhibit J attached to Supplement to *Complaint*).

3

The contract was ultimately awarded to Scioto Industrial, Inc.[3] Plaintiff complains that Scioto did not include a reference for a five-story building. Nevertheless, the evaluation team determined the bid to be materially complaint in all other respects. (*Barnhart Depo.* at 21).

According to Defendants, Plaintiff's bid was discovered to be materially deficient because Plaintiff failed to properly execute a statutorily required affidavit regarding verifying payment of due and owing personal property taxes. In addition, Plaintiff's references pertained to work performed by Plaintiff's sister corporation in the state of Virginia. This corporation had no connection with work to be performed by Plaintiff in Franklin County[4]. (*Deposition of Glenn Ford* at 25-30).

Plaintiff alleges that Defendants' failure to select it for award of the contract is a violation of due process and equal protection of law, pursuant to 42 U.S.C. § 1983. The Defendants move for summary judgment on Plaintiff's claims.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[3] Scioto's bid was for 313 hours of labor per day at a rate of $14.93, for a total yearly bid price of $1,215,000.

[4] In opposing summary judgment, Plaintiff states that it supplemented its bid proposal to include references for Plaintiff. The references are not, however, included in the bid proposal submitted to Defendants. Thus, the bid proposal was considered deficient.

4

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical

5

doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

In support of their motion for summary judgment, Defendants first argue that Plaintiff lacks standing to challenge its decision because Plaintiff's bid was materially deficient in that Plaintiff failed to include a property tax form and Plaintiff listed references for another company not bidding on the contract at issue.

It is clear that, in order to have standing to challenge the award of a public contract, the party must have submitted a bid for award of the contract. *State ex rel. Associated Bldrs. & Contrs. Cent. Ohio Chapter v. Jefferson County Bd. of Commrs.*, 106 Ohio App.3d 176, 182 (1995). It is also clear that when a party challenges a bid claiming to be the lowest bidder, standing exists. *See Regional Refuse Sys., Inc. v. City of Cleveland, et al.*, No. 44433, 1982 WL 5983 (Ohio App. Eighth Dist. October 28, 1982). In addition, a high bidder may challenge award to the lowest bidder on the basis that award to the lower bidder is in some way illegal. *See CB Transportation, Inc. v. Butler Co. Bd. of Mental Retardation*, 60 Ohio Misc. 71 (Butler Co. 1979).

In this case, Plaintiff is the unsuccessful high bidder. With the exception of Plaintiff's claim for violation of equal protection, Plaintiff does not argue that the contract award was in

some way illegal. Plaintiff simply takes issue with the fact that it was not found to be the "lowest and best" bidder.

The term "lowest and best bid," as used in the Revised Code, has no statutory definition. Thus, courts in Ohio have concluded that a certain amount of discretion is vested to a municipal authority in choosing a lowest and best bid for purposes of the award of a public contract. In *Altschul v. City of Springfield*, 48 Ohio App. 356 (1933), the Ohio Court of Appeals stated:

> It must be conceded that when the statute provides for the acceptance of the lowest and best bid the city is not limited to an acceptance of merely the lowest dollar bid. The statutes of this state as to most public work provided some years ago for the acceptance of only the lowest bid. That was subsequently amended so as to read 'lowest and best bid.' This amendment clearly indicates that the Legislature recognized that an element other than the mere low dollar bid often enters into the letting of a contract. Hence the amendment providing that the contract should be let to the lowest and best bidder followed. This amendment, therefore, places in the hands of the city authorities the discretion of determining who under all the circumstances is the lowest and best bidder for the work in question.
>
> > This discretion is not vested in the courts and the courts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them.

*Id.* at 362.

Accordingly, municipal officials are presumed, in the absence of evidence to the contrary, to have acted to have acted in a regular and lawful manner in determining whom is the lowest and best bidder for a contract. *Cedar Bay Constr., Inc. v. Fremont*, 50 Ohio St.3d 19, 21 (1990). The party, who has standing to challenge a municipal action, has the burden to show abuse of discretion. An abuse of discretion requires a showing of evidence that the Defendants' decision was arbitrary, unreasonable or unconscionable. *See Dayton, ex rel. Scandrick, v. McGee*, 67 Ohio St.2d 356 (1981).

Defendants argue that Plaintiff does not even possess the requisite standing to challenge the award as an alleged abuse of discretion. The Court agrees. Plaintiff does not purport to be the lowest bidder to the contract but rather concedes that it is a high bidder. As stated *supra*, in the absence of some allegation of illegality, this Court will not interfere in the decision made by Defendant as to the contract award.

Plaintiff does argue that the award is illegal as a violation of equal protection. Plaintiff has standing to make this challenge[5]. The Equal Protection Clause of the Fourteenth Amendment[6] prohibits discrimination by the government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference in treatment. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Under the rational basis standard, a difference in treatment is rational if there is any reasonably conceivable state of facts that could show a rational basis for the classification. *See e.g., Heller v. Doe*, 509 U.S. 312 (1993).

Plaintiff's equal protection claim is brought pursuant to 42 U.S.C. § 1983. Plaintiff sues each of the Franklin County Commissioners in their official capacities. For purposes of § 1983, this means that the suit is essentially against the Board of Commissioners itself, which is also named as a Defendant. *Kentucky v. Graham*, 473 U.S. 159 (1985). The Board of Commissioners, as a municipal entity, can only be held liable under § 1983 if the alleged constitutional deprivation was the result of an official policy or custom. *Monnell v. Department*

---

[5] The Court notes that Defendant agrees that standing is present for an equal protection challenge. (*Reply Memorandum* at 3, n.1).

[6] The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

8

*of Social Services*, 436 U.S. 658, 690 (1978). A policy is a deliberate choice as to a course of action made from various alternatives by the officials responsible for such policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

In this case, Plaintiff alleges no policy or custom on the part of the Franklin County Board of Commissioners of exhibiting bias toward competitive bidders. For this reason alone, summary judgment is warranted on Plaintiff's equal protection claim. Nevertheless, even if Plaintiff had established a policy or custom sufficient for liability, Plaintiff fails to come forward with evidence sufficient to create any genuine issue of material fact that he was deprived of equal protection of the law. Plaintiff does not purport to be a member of a suspect class nor does Plaintiff allege the burden of a fundamental right.

Plaintiff does argue that it was deprived of equal protection because Defendants' decision to award the contract to Scioto Industrial lacked a rational basis. In support of this position, Plaintiff places particular emphasis on the fact that Ms. Barnhart harbored an ill-will toward Plaintiff's President, Glenn Ford. According to Plaintiff, this perceived bias necessarily means that Plaintiff has been deprived of equal protection of the law. The Court disagrees. The evidence of alleged bias is wholly speculative in nature and is insufficient to create a genuine issue of material fact on the claim that Defendants' decision to award the contract to Scioto Industrial lacked a rational basis.

For these reasons, the Defendants' motion for summary judgment on Plaintiff's equal protection claim is meritorious[7].

---

[7] The Court notes that, in the Complaint, Plaintiff also alleges violation of due process of law. Plaintiff makes no reference to this claim in its Memorandum *contra* but rather focuses solely on the equal protection challenge. Thus, the Court finds that Plaintiff has abandoned the due process claim.

## IV.

In light of the foregoing, the Defendants' Motion for Summary Judgment (**Doc. #13**) is **GRANTED**. The Clerk is **DIRECTED** to enter Judgment in Defendants' favor and to close this case.

**IT IS SO ORDERED.**

3-6-2006
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE